[No. 3556.]

## PARK ET AL. V. McKEE ET AL.

1. EQUITY—*Reformation of Writing.* A mistake in the phraseology of a written contract by which it is made to depart from the intent of the parties may be reformed, and the contract as so reformed enforced, in the same action.

The evidence held amply sufficient to establish the mistake charged.

2. PRACTICE—*Failure to Decree upon Cross-Complaint.* Failure to dispose of a cross-complaint interposed by the defendant is not fatal error. *Pace v. Cline,* 22 Colo. App. 254, followed.

*Appeal from Larimer District Court.* HON. JAMES E. GARRIGUES, Judge.

Messrs. LEE & AYLESWORTH, for appellants.

Mr. JOHN H. SIMPSON, for appellees.

CUNNINGHAM, Presiding Judge.

The appellees here, as plaintiffs below, brought their action to have a certain contract or agreement, hereinafter referred to, reformed, and as reformed specifically performed, and for damages.

The allegations of the complaint were, in substance, that Park and Bell, on December 31, 1904, entered into a contract or agreement wherein and whereby it was provided that Park should transfer to Bell a tract of land situate in Morgan county, together with certain water rights, in exchange for a stock of merchandise which Bell was to transfer by bill of sale to Park. Pursuant to this agreement Park deeded the land to Bell, Bell transferred

the stock of merchandise to Park, and the latter took possession of the same. Later Bell transferred the real estate and the water rights, whatever they may be, to James M. McKee and Ed. F. Rose. McKee having died, his widow, Mary J., was appointed administratrix of his estate. The other McKees are heirs of James. Shortly before this suit was instituted, Bell also transferred or assigned the original agreement between himself and Park, which provided for the exchange of the land and water rights for the stock of merchandise, to the administratrix and Rose. This agreement contains the following clause pertaining to the water rights that were to be transferred by Park to Bell:

"Whereas, the first party (Park) has this day agreed and does hereby trade and sell to the second party (Bell) * * * five *shares* of water in the Weldon Valley Ditch Company for the irrigation of the same," meaning for the irrigation of the land which Park was trading to Bell.

It was developed on the trial, and was not disputed, that by some method of computation not necessary here to explain, eight *shares* of water in the Weldon Ditch Company constituted one water *right* in that company. (The italics, wherever used throughout the opinion, are ours.) This distinction between water shares and water rights was well understood by those interested in the ditch. It was alleged by the plaintiffs that the original understanding between Park and Bell, at the time of the preparation of the written agreement from which we have quoted, was that Park was to transfer to Bell as a part of the agreement five water rights and that the word "*shares,*" as the same appeared in the agreement, was used inadvertently, and did not express the intention of the parties. Park transferred four water *rights,* or thirty-two shares of water in the ditch company, which is the equivalent of four water rights, but refused to transfer the additional eight shares or the additional one water

right, which the plaintiffs insisted it was his duty, under the agreement as it was intended by both parties to have been drawn, to do. The Ditch Company being but a nominal defendant, its answer and part in the trial need not be considered. After various pleadings, Park filed an answer containing a cross-complaint, denying that it was intended or that the agreement should have read, "five water rights," instead of "five water shares," but alleged, on the contrary, that the agreement expressed the true intention and purpose of the parties at the time it was made. In his cross-complaint Park charged that Bell represented and guaranteed the stock of goods to be worth at least $6,000, whereas it was worth not to exceed $4,550. He therefore prayed, in his cross-complaint, for damages against the plaintiffs in the sum of $1,450. He also asked to have the one water right quieted in him, that is, the one water right or eight shares which by their complaint the plaintiffs were seeking to recover. The decree of the court was in favor of plaintiffs, and was based upon general findings. The agreement between Park and Bell was reformed so as to read, "five water rights," instead of "five shares of water," and the decree further required, "that defendant, George R. Park, do deliver to the clerk of this court the certificate of stock, standing for and representing said one water right, duly assigned to the plaintiffs herein, and that the clerk of this court thereupon deliver the same to the said plaintiffs."

1. The evidence offered by the defendant Park is amply sufficient in itself to sustain the decree of the trial court reforming the contract. After McKee became interested in the land, he appears to have written Park concerning the one water right which the latter had not yet transferred, and which is the bone of contention in this case. Replying to McKee, under date February 12, 1906, Park wrote as follows:

"I do not think I will transfer all of the rights until

George C. Bell settles with me for what he owes. I hold his note, and also a small account amounting to somewhere about $70, and I do not know of any other way to collect same but by holding some of the water rights. * * * Of course I don't know anything about who bought the land, but will immediately turn what water belongs to the place over upon the payment of what the party owes to me whom I sold the place to," meaning, of course, Bell, as it was Bell to whom he sold the place. Park further testified, while being examined by the plaintiffs under the statute, as follows:

"Q. When this contract was sent you and you found the words in there 'five shares' did you intend to deliver to Mr. Bell simply five shares or five rights? A. I intended nothing that I can remember; I proposed to sign up the contract my son Robert made, whatever it was. You have the documents before you, the deed and the contract. Make all you can of them."

Robert Park, the son of the defendant, represented his father in the trade, and the defendant George Park testified:

"I told him (meaning Bell) that whatever my son Robert did there, I would stand behind him."

The son testified:

"As far as, I am concerned five shares in the contract means five water rights. I reached the conclusion to turn over the five water rights after we had come to Hill's office. Mr. Hill got his information from me in drawing the contract (meaning the original agreement here in dispute) and it was an error on the part of the stenographer in getting 'water rights' and 'water shares' twisted. There is no doubt but what Mr. Hill gave it to the stenographer right, but there was some mistake in taking it down."

(Judge Hill was the attorney who drew the original agreement between the parties.) Appellee Bell also testified unequivocally that water rights instead of water shares was what was in the contemplation of both parties, and ought to have been included in the agreement.

2. The best that can be said for the defendant Park's contention, made in his cross-complaint, that Bell had misrepresented the value of the goods, is that the evidence on that point was conflicting. Moreover, it is not consistent with the statements contained in his letter to McKee, written some fourteen months after he had taken possession of the stock of goods, from which we have already quoted. It will be observed by reading this quotation that his only claim against Bell at that time was based upon a note and a small account, and that he was holding the water shares or water right to secure the payment of these two items. According to his testimony, if there was any discrepancy in the value of the goods as represented by Bell, and as found by invoice, this fact was known to Park long before the time when he wrote the letter to McKee.

3. Complaint is made in the brief filed on behalf of appellant Park that the trial court's decree is silent as to any affirmative finding on the defendant's cross-complaint, and, for this reason, it is insisted, the case must be reversed. This contention has been disposed of by us in *Pace v. Cline,* 22 Colo. App., 254, 125 Pac., 128, contrary to the contention of the appellant.

4. We have not overlooked the further objection of appellant, based on his plea in abatement, or in bar, which was injected into the case in the form of a supplemental answer, filed more than a year after the filing of the original answer. The matters set up in the supplemental plea in bar must have been quite as well known in August, 1907, when the original answer was filed, as in September, 1908, when the supplemental plea was filed. The trial

judge aptly remarked on the trial that the "record is so muddled up that I can't tell anything about it," meaning the contention that there had been a previous adjudication between the parties involving the same matter, which purported adjudication formed the basis for the plea in bar. We cannot say that the trial court committed error in overruling the plea in bar.

The judgment of the trial court is affirmed.

Decided January 13, A. D. 1913. Rehearing denied April 14, A. D. 1913.